UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V.  ) | NO. 14-10159 |
| ) | |
| KHAIRULLOZHON MATANOV ) | |
| ) | |

EX PARTE
AFFIDAVIT OF COUNSEL
FILED UNDER SEAL

1. My name is Edward L. Hayden. I am an attorney with an office at 7 Franklin Street, Lynn, MA 01902.

2. Magistrate Judge Marianne Bowler appointed me to represent the Defendant at the initial appearance on May 30, 2014. The case was continued to June 4, 2014, for a detention hearing.

3. After the initial appearance, I was introduced to Michele McPhee. Ms. McPhee is a well-known investigative journalist in Boston.

4. Ms. McPhee informed me that she planned on writing a story based on the Defendant's May 31, 2013, interview with law enforcement. She told me what she believed the Defendant had said during that interview.

5. Ms. McPhee requested that I give her a copy of the FBI 302 report for the May 31st interview. At this point I did not yet have any discovery, but I informed Ms. McPhee that I would not give her the FBI 302 that she had requested.

6. On June 3, 2014, AUSA Scott Garland gave me a CD containing 108 pages of discovery (the first CD). The discovery consisted mostly of FBI 302 reports but it also contained a transcript of Matanov's interview at the Braintree police department (12 pages) and documents concerning his money transfers through Money Gram (5 pages).

7. I was not asked to sign a non-disclosure agreement with the United States Attorney's office concerning the first CD and Mr. Garland told me that I was free to do what I wanted with the documents. The court had not issued a protective order regarding this material.

8. On June 4, 2014, the court held an evidentiary hearing regarding the government's request for detention. After the hearing, AUSA Garland reiterated to me that there was no protective order for the FBI 302 reports and I was free to do what I wanted with them..

9. Following the hearing, Ms. McPhee again asked me for a copy of the May 31, 2013, FBI 302 reports. I declined to do so.

10. Over the next three weeks, I spoke to Ms. McPhee several times, both in person and by phone. Each conversation was about the May 31st interview and every time she requested a copy of the FBI 302 report for that interview. Each time, I declined to do so.

11. During this time, I carefully read all the 302 reports. I concluded that two reports, April 20th and May 31st, established that Ms. McPhee's information concerning what the Defendant said during the May 31st interview was inaccurate. I informed her of this, but she insisted on seeing the two reports.

12. I was concerned that Ms. McPhee would publish an inaccurate story that would be prejudicial to my client.

13. I thought it was imperative to convince Ms. McPhee not to publish an inaccurate story.

14. As a result of these conversations and for strategic reasons, I decided to give Ms. McPhee on June 23, 2014, the 302 reports for the April 20, 2013 and May 31, 2013 interviews of the Defendant. I felt that this step was necessary to rebut the inaccurate information that she had received from law enforcement. These two reports had not been given to me subject to a non-disclosure agreement nor had the court issued a protective order.

15. The Boston Magazine story that Ms. McPhee wrote did not contain the inaccurate information that she had believed was in the May 31st FBI 302 report.

16. In the first week of July 2014, the government sought a protective order with the assent of the Defendant, regarding the discovery materials provided in this case. AUSA Garland then gave me a second CD of discovery.

17. Once I signed the non-disclosure agreement, I never gave Ms. McPhee any discovery materials, despite her requests to do so.

18. After I received the first CD (302's, Braintree interview, Money Gram documents), and before the protective order, I gave paper copies to the following people:

    - Cathy Jordan, Secretary, Passed away June 13, 2014
    - Khairullozhon Matanov

19. Once I signed the protective order, the following people signed it and I gave them paper copies of the discovery indicated.

    - Carl Rosa, McKinnon Printing –Second CD

- Khairullozhon Matanov – Second CD
- Mike Veronneau, MWV, Multi-Media Forensic Investigative Services- First and Second CD
- Sara Alcorn – Investigator – First and Second CD
- Darlene Finnigan – Secretary – July 3 to present – First and Second CD
- Nancy Gertner – First CD

20. I am aware that it is a federal crime in violation of 18 U.S.C. 1001 to provide false information or to conceal material facts.

Signed under the pains and penalties of perjury this 15th day of January 2015.

Edward L. Hayden