UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KHAIRULLOZHON MATANOV,<br>Defendant | Crim. No. 14-10159-WGY |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States moves the Court to accept the parties' plea agreement and sentence Mr. Matanov to 30 months of incarceration; 36 months of supervised release following incarceration; no fine, because he currently lacks the financial means to pay one; and a mandatory special assessment of $400. This is a reasonable sentence.

### I.   SENTENCING GUIDELINE ISSUES

Although the United States has requested a below-guidelines sentence, it must address how to calculate the sentencing guidelines nonetheless.

The parties have not stipulated to any sentencing guideline calculations. *See* Plea Agreement ¶ 4. During the PSR process, however, the parties narrowed their guideline disputes to two issues: whether to apply USSG § 2J1.2(b)(3)(A),(B) and USSG § 3A1.4.[1]

#### A.   USSG § 2J1.2(b)(3)(A) or (B) — Destruction of Records

The PSR erroneously omits the two-point enhancement for USSG § 2J1.2(b)(3)(A) or (B). That enhancement applies "[i]f the offense (A) involved the destruction, alteration, or

---

[1] Mr. Matanov admitted to having lied to the government and destroyed records, as alleged in the Superseding Information and described at the change-of-plea hearing. Had Mr. Matanov not admitted this, the parties might well dispute whether USSG § 3E1.1 (Acceptance of Responsibility) should apply. During the presentence investigation, however, Mr. Matanov accepted all of the facts alleged against him, and objected only to the application of certain guidelines on legal grounds. Consequently, there is no guideline dispute on this point.

1

fabrication of a substantial number of records, documents, or tangible objects; [or] (B) involved the selection of any essential or especially probative record, document, or tangible object, to destroy or alter." USSG § 2J1.2(b)(3). In other words, the enhancement applies if Mr. Matanov deleted a lot of records or if he deleted important records, or both.

Subparagraph (A) — destruction of a substantial number of records — applies because Mr. Matanov "deleted from his computer a large amount of information," PSR ¶ 40, which included "a large amount of information from his Google Chrome Internet cache," PSR ¶ 41, and approximately 1279 folders and files from his computer's videos and documents folders, PSR ¶ 42. These facts are undisputed.

Although the PSR concedes that "the defendant did delete a significant amount of computer files/videos," it erroneously refuses to apply the USSG § 2J1.2(b)(3) enhancement because "it is not clear that these files were essential or especially probative to the marathon bombing investigation." PSR at 27 (response to Government's Objection #4).

This is legal error because it presumes that for USSG § 2J1.2(b)(3) to apply, the United States must prove the application of *both* subparagraph (A) ("substantial number of records") *and* subparagraph (B) ("essential or especially probative record"), whereas the enhancement merely requires proof of only one *or* the other. *See* USSG § 2J1.2(b)(3) (using "or" rather than "and"). Because the undisputed facts establish that Mr. Matanov deleted a substantial number of records, USSG § 2J1.2(b)(3)(A) applies, whether subparagraph (B) also applies or not.

This is not to concede that USSG § 2J1.2(b)(3)(B) ("essential or especially probative record") does not apply. To the contrary: subparagraph (B) applies as well. It is undisputed that the records that Mr. Matanov deleted included "references to the video of the suspected bombers (later identified as the Tsarnaevs) released by the FBI on April 18, 2013, at approximately 5:15

p.m. [before the brothers' apprehension], two of the photographs of the bombers released at approximately the same time, and a photograph of Officer Sean Collier," PSR ¶ 41, as well as "some files that contained violent content or calls to violence," PSR ¶ 42. It is also undisputed that by deleting this information, Mr. Matanov "obstructed the FBI's determination of his Internet activity during the night of April 18, 2013 and the day of April 19, 2013, and the extent to which he shared the suspected bombers' philosophical justification for violence, among other topics of interest." PSR ¶ 43. It is finally undisputed that Mr. Matanov's "deletions obstructed the FBI's investigation of the bombings and the suspected bombers, and caused the FBI to expend considerable additional resources during its investigation of the bombings and the suspected bombers." PSR ¶ 43. This all establishes that Mr. Matanov's crime "involved the selection of any essential or especially probative record . . . to destroy." USSG § 2J1.2(b)(3)(B). Consequently, USSG § 2J1.2(b)(3)(B) applies in addition to subparagraph (A).

The PSR also applies the wrong standard of proof. It presumes that the United States must make it "clear" that subparagraph (A) or (B) applies. *See* PSR at 27 (response to Government's Objection #4). But the standard of proof for applying a sentencing guideline provision is not proof beyond a reasonable doubt or even proof by clear or convincing evidence, but rather proof by the preponderance of the evidence. *See United States v. Doe*, 741 F.3d 217, 234 (1st Cir. 2013) (holding post-*Alleyne v. United States,* — U.S. —, 133 S. Ct. 2141 (2013), that "it remains within the sentencing court's discretion to judicially find facts informing the sentence actually imposed, provided that any such fact does not trigger a mandatory minimum punishment or alter a statutory maximum, and that the ultimate sentence remains within the range of penalties set forth in the statute of conviction," and that "[i]n such a situation, *Alleyne* does not apply, and the sentencing court may continue to find facts based upon a preponderance

of the evidence"), *cert. den.,* — U.S. —, 135 S. Ct. 168 (2014). By these standards, the preponderance of the evidence weighs on the side of applying USSG § 2J1.2(b)(3)(A) or (B).

For these reasons, the Court should apply to Mr. Matanov the two-level enhancement in USSG § 2J1.2(b)(3)(A) and/or (B). (Only one two-level enhancement is possible, however, even if both subparagraphs (A) and (B) apply.)

      **B.**      **USSG § 3A1.4 — Terrorism Enhancement**

The PSR correctly applies the terrorism enhancement in USSG § 3A1.4. That guideline applies "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." USSG § 3A1.4(a). Application Note 2 further explains that "[f]or purposes of this guideline, an offense that involved (A) harboring or concealing a terrorist who committed a federal crime of terrorism (such as an offense under 18 U.S.C. § 2339 or § 2339A); or (B) obstructing an investigation of a federal crime of terrorism, shall be considered to have involved, or to have been intended to promote, that federal crime of terrorism."

The United States has not accused Mr. Matanov of acting to promote terrorism or of harboring or concealing a terrorist. Consequently, for present purposes, USSG § 3A1.4(a) applies if, as here, the offense was a felony that involved a federal crime of terrorism, because he obstructed an investigation of a federal crime of terrorism.

USSG § 3A1.4 applies to Mr. Matanov on its face. It applies "[i]f the offense is a felony that involved . . . a federal crime of terrorism." USSG § 3A1.4(a). Mr. Matanov's crime plainly involved a federal crime of terrorism, the Boston Marathon bombings. He lied about the bombers' whereabouts and his interactions with them after the bombings. He also destroyed computer files that could bear on the extent to which he sympathized with the bombers' religious and political beliefs. He consequently tied up FBI and JTTF investigators to determine his

connection to the bombings.  His obstruction involved the bombings and the investigation into the bombings, regardless of whether he intended to promote the bombings or not.  Mr. Matanov might have acted to save himself rather than to help the bombers.  But he did so knowing that the investigation involved the bombings and the bombers.

USSG § 3A1.4's second application note clarifies this point by mandating that a felony that involved a federal crime of terrorism includes not just committing or planning terrorism, but also obstructing a federal terrorism investigation.  That application note provides that "[f]or purposes of this guideline, an offense that involved . . . obstructing an investigation of a federal crime of terrorism, shall be considered to have involved, or to have been intended to promote, that federal crime of terrorism."  USSG § 3A1.4 comment. (n.2).  "A [sentencing guideline] commentary provision, such as [an] Application Note [], which functions to interpret a guideline or explain how it is to be applied is binding as long as the commentary does not conflict with the Constitution, a federal statute, or the guideline at issue."  *United States v. Hogan,* 722 F.3d 55, 60 (1st Cir. 2013) (citation and internal quotation marks omitted).  Here, USSG § 3A1.4(a) and Application Note 2 are consistent.

Mr. Matanov erroneously claims that the two conflict.  They do not.  The guideline applies "[i]f the offense is a felony that involved . . . a federal crime of terrorism."  USSG § 3A1.4(a).  Application Note 2 explains that "[f]or purposes of this guideline, an offense that involved . . . obstructing an investigation of a federal crime of terrorism, shall be considered to have involved . . . that federal crime of terrorism."  The application note supports the guideline.  As the Fourth Circuit held, "One might wonder, in the abstract, whether obstructing an investigation into a federal crime of terrorism necessarily 'involve[s]' a federal crime of terrorism, but plainly one could think that it does, and Application Note 2 decides the matter.

Indeed, the language of Application Note 2 is identical in all material respects to the language of § 3A1.4 itself. *There is no inconsistency of any kind.*" *United States v. Benkahla,* 530 F.3d 300, 312 (4th Cir. 2008) (emphasis added).

Consequently, USSG § 3A1.4 has been applied to a defendant who did not directly participate in terrorism or promote terrorism, but nevertheless obstructed an investigation into a federal crime of terrorism. *See United States v. Benkahla,* 501 F. Supp. 2d 748 (E.D. Va. 2007), *aff'd,* 530 F.3d 300, 312 (4th Cir. 2008). *Cf. United States v. Biheiri,* 356 F. Supp. 2d 589 (E.D. Va. 2005) (holding that § 3A1.4 and Application Note 2 would apply to a defendant who obstructed justice in an investigation of a federal crime of terrorism, but finding that it did not apply to that defendant because he did not actually obstruct the investigation but rather merely attempted to do so).

Mr. Matanov claims that *Benkahla* is distinguishable from his own situation because Benkahla was involved in terrorism whereas Matanov was not. But the *Benkahla* courts applied USSG § 3A1.4 not because Benkahla was involved in terrorism, but rather because his lies concerned a terrorism investigation. In fact, the district court in *Benkahla* expressly noted that "Defendant's offenses neither *directly* 'involved' nor were 'intended to promote' a federal crime of terrorism." 501 F. Supp. 2d at 751 (emphasis in original). And the appellate court affirmed on this point. *Benkahla,* 530 F.3d at 312 (noting that Application Note 2 conclusively decided that obstructing an investigation into a federal crime of terrorism necessarily involves a federal crime of terrorism).

Mr. Matanov cites other caselaw as supporting his position. It does not.

*United States v. Graham*, 275 F.3d 490 (6th Cir. 2001), does not support his position because *Graham* did not consider whether the defendant obstructed justice. Graham was not

even charged with obstruction of justice. Rather, the case discussed only whether Graham's conspiracy to commit violent acts came within the class of terrorist acts included in USSG § 3A1.4. Finding that it did, the Sixth Circuit upheld the district court's application of § 3A1.4 to Graham. *Graham* does *not* say that it intended to exclude application of § 3A1.4 to someone like Mr. Matanov, who obstructed a terrorism investigation. To suggest otherwise is to misconstrue the case. And to the extent that *Graham*'s verbiage seems to limit interpretation of the word "involved," *Graham* is inapposite because it did not examine Application Note 2 and its meaning in an obstruction case.

*United States v. Arnaout*, 431 F.3d 994 (7th Cir. 2005) — also cited by Mr. Matanov — fares no better. In *Arnaout*, USSG § 3A1.4 did not apply simply because the acts that the defendant funded were not federal crimes of terrorism. (Arnaout helped finance foreign soldiers, but those soldiers were not proved to have been involved in federal crimes of terrorism. *Id.* at 1002-03.) Consequently, he did not promote terrorism. And although Arnaout did obstruct a federal investigation, it was a federal investigation of his own fraud and racketeering, not an investigation into a federal crime of terrorism. To the extent that *Arnaout* can be read to equate the words "involve" and "include," that is dictum because *Arnaout* did not involve obstruction of a federal crime of terrorism. Mr. Matanov's case, on the other hand, is distinguishable because he clearly obstructed the investigation of the Boston Marathon bombings, which were federal crimes of terrorism.

As a final reason[2] for applying USSG § 3A1.4 to Mr. Matanov, note that this guideline

---

[2] During the presentence investigation, Mr. Matanov also argued that USSG § 3A1.4 should not apply because (a) the Superseding Indictment omitted the federal terrorism investigation element from each of the 18 U.S.C. § 1001 charges, thus lowering the charges' statutory maxima from eight to five years, and (b) the Government's 30-month sentencing recommendation falls below the guideline range dictated by USSG § 3A1.4. Mr. Matanov's brief dropped those arguments.

has also been applied to each of the defendants charged with obstructing justice in the New Bedford cases related to the Boston Marathon bombings, including Robel Phillipos, the defendant most analogous to Mr. Matanov. The guideline has wide application.

For all these reasons, USSG § 3A1.4 applies to Mr. Matanov as well.

## II.   THE 30-MONTH SENTENCING RECOMMENDATION

The U.S. Attorney's insistence upon calculating the sentencing guidelines correctly and arriving at a guideline sentencing range of 151-188 months does not mean that the U.S. Attorney is insisting upon a full guideline sentence. The U.S. Attorney understands that the guidelines apply to a wide variety of defendants, a wide variety of circumstances, and a wide variety of criminal acts. Her sentencing recommendation must consider not only the guidelines, but also the defendants, circumstances, and acts that inform the guideline calculations. These principles are set forth in 18 U.S.C. § 3553(a), and include principles such as just punishment, general and specific deterrence, and parsimony.

With three defendants already having been sentenced in related cases, another such principle is that of proportionality. Mr. Matanov should receive a sentence that is proportionate to those received by the earlier defendants. In comparison to those earlier sentences of 72

---

In case those arguments are resurrected at oral argument, however, the United States briefly addresses them here. The U.S. Attorney had no objection to charging Mr. Matanov with the lesser-included offense of obstructing a federal investigation (rather than the greater offense of obstructing a federal terrorism investigation) and to forgoing the eight-year statutory maximum sentence that would otherwise apply, because the Government's ultimate sentencing recommendation fell below the five-year statutory maximum. And facts are facts: Mr. Matanov obstructed justice in the midst of a massive federal terrorism investigation, whatever the charges' names. The United States has recommended a below-guideline sentence because, as discussed elsewhere in this memorandum, a variance recognizes that while the guidelines inform sentences and sentencing recommendations, the guidelines do not dictate them. Other values also inform these decisions, values such as retribution, deterrence, parsimony, and proportionality. *See, e.g., Benkahla,* 501 F. Supp. 2d at 759-62 (varying downward after applying § 3A1.4 to defendant who obstructed investigation into a federal crime of terrorism), *aff'd on other grounds,* 530 F.3d 300 (4th Cir. 2008) (noting that variance was not appealed).

months (Dias Kadyrbayev), 42 months (Azamat Tazhayakov), and 36 months (Robel Phillipos), a 30-month sentence for Mr. Matanov is proportionate, given what he and they did.  Whereas the New Bedford defendants' crimes concerned evidence that was potentially critical in the case against Dzhokhar Tsarnaev, Mr. Matanov's crime largely obstructed inquiry into his ties to the Tsarnaevs and his and the Tsarnaevs' movements in the hours and days after the bombings.

**III.   CONCLUSION**

For all these reasons, the United States moves this Court to accept the parties' plea agreement and sentence Mr. Matanov according to that agreement.

    Respectfully submitted,

    CARMEN M. ORTIZ
    United States Attorney

    */s/ Scott L. Garland*
    Scott L. Garland
    Aloke S. Chakravarty
    Assistant United States Attorneys
    1 Courthouse Way, Ste. 9200
    Boston, MA 02210
    617-748-3290
    scott.garland@usdoj.gov
    Massachusetts Bar # 650358

**CERTIFICATE OF SERVICE**

      I hereby certify that this document is being filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                        */s/ Scott L. Garland*
                                        Scott L. Garland
                                        Assistant United States Attorney

Date: June 16, 2015